## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | : |
| | : |
| IN THE MATTER OF APPROXIMATELY | :   CIVIL ACTION NO. 25-CV-105 |
| 0.21385315 BTC IN NOONES WALLET | : |
| ADDRESS ENDING IN dumas0krp | : |
| WITH ACCOUNTHOLDER NAME | : |
| OF SHAHDAB SAYEED | : |

## **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

NOW INTO COURT COMES Plaintiff, United States of America, by and through undersigned counsel, who alleges the following:

## **NATURE OF THE ACTION**

1. This is a civil action *in rem* to forfeit to the United States 0.21385315 BTC from wallet address ending in dumas0krp at the Noones Cryptocurrency Exchange, representing proceeds traceable to a violation of wire fraud, in violation of 18 U.S.C. § 1343. Therefore, pursuant to 18 U.S.C. § 981(a)(1)(C), the defendant property is subject to forfeiture to the United States of America.

2. The defendant property was seized on or about January 10, 2024. The 0.21385315 BTC from the Noones Exchange is in the custody of the United States Secret Service.

## **JURISDICTION AND VENUE**

3. The United States brings this action in rem in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has in rem jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest

warrant in rem pursuant to Supplemental Rule G(3)(b), which the United States will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(b) & (c).

5. Venue is proper in this district, pursuant to 28 U.S.C. § 1355(b)(1), because acts or omissions giving rise to the forfeiture occurred in this district, pursuant to 28 U.S.C. § 1395.

## THE DEFENDANT IN REM

6. The defendant property consists of the following:

0.21385315 BTC from wallet address bc1qdqepvg3z3q0gvkhrkry6v8w35zxtadumas0krp at the Noones Cryptocurrency Exchange (hereinafter referred to as the "defendant property").

## FACTS

7. K.L., a resident of Baton Rouge, advised that he/she received an email on May 23, 2024, advising him/her that their Norton AntiVirus/Norton Internet Security ("Norton Security") subscription had been automatically renewed in the amount of $399.99. This email contained a "Help" number. K.L. did not want to renew this subscription.

8. Believing this to be a legitimate email from Norton Security for his/her supposed Norton Security subscription renewal, the victim, K.L., contacted the phone number provided in the email and spoke with someone named "Donald Gray," a supposed security representative, who instructed the victim to click on a specific link, which appeared to be on Norton Security's homepage. "Donald Gray," the supposed security representative, stayed on the phone with the victim and walked through the steps with him/her to assist the victim in what they believed was the process to unsubscribe from the Norton Security subscription and to receive a refund of the $399.99 subscription fee.

9. "Donald Gray" instructed the victim to log into their bank account. "Gray" instructed the victim to type in his/her name and, after two $200.00 transactions, the victim's

2

$399.99 subscription fee would be refunded. The victim typed in the initial $200.00 and it appeared to the victim to have been refunded to him/her. When the victim attempted to type in the second $200.00, the amount increased to $20,000.00 and the victim had no way to delete this amount. At this point, "Donald Gray" became upset, stating, "Oh, no! What have you done? You have just taken my money and my manager is furious." "Gray" then instructed the victim to follow his directions or else he would contact the police.

10. The victim panicked and, believing that he/she had been overpaid by approximately $19,800 from Norton Security, agreed to follow "Gray's" instructions. "Gray" directed the victim to go to his/her bank and withdraw $19,800.00 for reimbursement to Norton Security. "Gray" instructed the victim that, if the bank inquired why he/she needed to withdraw the $19,800.00 in cash, to tell the bank that it was for the purchase of a new vehicle. The victim withdrew $19,800.00 from their bank account.

11. After the victim withdrew approximately $19,800.00 from his/her bank account, "Gray" then instructed the victim to download the Bitcoin Depo app onto his/her phone and then to drive to a Circle K convenience store located at 10391 Airline Hwy., Baton Rouge, Louisiana, which had a bitcoin ATM machine. Once arriving at the Circle K, "Gray" directed the victim to place the money into the Bitcoin Depot ATM machine and, pursuant to "Gray's" instructions, transfer the funds into a Bitcoin Depot account.

12. After having followed these instructions and after realizing that he/she may have been the victim of a scam, K.L. contacted the East Baton Rouge Sheriff's Office ("EBRSO").

13. EBRSO Sgt. Kristen McKnight conducted blockchain analysis and discovered that, on May 23, 2024, K.L. deposited the cash into a Bitcoin ATM operated by Bitcoin Depot in Baton Rouge, Louisiana, and, after deducting fees, approximately 0.21391045 BTC was transferred to

3

wallet address 3QDm5cYZmux2EFsruGg5U1qfhYLERtKxoK. The only cryptocurrency in this Bitcoin Depot wallet address after this deposit was the victim's bitcoin. On May 23, 2024, right after the deposit of the approximately 0.21391045 BTC, 0.21385315 BTC was then transferred from wallet address 3QDm5cYZmux2EFsruGg5U1qfhYLERtKxoK into wallet address bc1qdqepvg3z3q0gvkhrkry6v8w35zxtadumas0krp at the Noones Exchange. The victim, K.L., did not consent to, and had no knowledge of, the tranfer of his/her bitcoin into the Noones wallet address ending in dumas0krp.

14. Sgt. McKnight discovered that the accountholder of the wallet address bc1qdqepvg3z3q0gvkhrkry6v8w35zxtadumas0krp at Noones was Shahdab Sayeed with an address in India.

15. Sgt. McKnight has investigated this same type of fraud scheme on numerous previous occasions. Based on her knowledge and experience, bad actors often impersonate representatives of legitimate companies and attempt to convince victims that they are actually victims of fraud and that, to safeguard their funds, the victim needs to withdraw funds from their bank accounts, deposit the funds into a bitcoin ATM, and then transfer the bitcoin to a supposed "secure" account that has been set up just for them. In reality, the supposed "secure" account is actually a wallet address set up and controlled by the bad actor; the victim often does not have access to this supposed "secure" wallet address.

16. The defendant property is believed to be the proceeds of a wire fraud offense because the bad actor knowingly devised a scheme to defraud the victim, K.L., by employing material false representations via wire communications, namely by telling the victim that his/her money was at risk and that, to protect the money, it had to be withdrawn and deposited, via a Bitcoin ATM, into a supposedly "secure" account.

4

**LAW**

17. 18 U.S.C. § 981(a)(1)(C) provides that the following shall be subject to forfeiture to the United States:

> "Any property, real or personal, which constitutes or derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title)     "

**BASIS FOR FORFEITURE**

18. The defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), because it represents property constituting proceeds traceable to a violation of a wire fraud offense.

**CLAIM FOR RELIEF**

19. Based on the facts set forth and incorporated herein, the defendant property should be properly condemned and forfeited to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the defendant property; that notice of this action be given to all persons known or thought to have an interest in or right against the defendant property; that the defendant property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs

and disbursements in this action; and that the Court award the plaintiff such other and further relief as this Court deems proper and just.

                UNITED STATES OF AMERICA, by

                RONALD C. GATHE, JR.
                UNITED STATES ATTORNEY


                /s/ J. Brady Casey
                J. Brady Casey, LBN: 24338
                Assistant United States Attorney
                777 Florida Street, Suite 208
                Baton Rouge, Louisiana 70801
                Telephone: (225) 389-0443
                Fax: (225) 389-0685
                E-mail: john.casey@usdoj.gov